**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In the Matter of Application of PANDORA MEDIA, LLC,<br><br>　　　　　　　　Applicant,<br><br>　　　　-For an Order-<br><br>To Compel WORD COLLECTIONS, INC. to Produce Documents,<br><br>　　　　　　　　Respondent. | Misc. Civil Action No. _____<br><br>(Related to Civil Action No. 2:22-cv-00809-MCS-MAR C.D. Cal.) |

**PANDORA MEDIA, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL WORD COLLECTIONS, INC. TO COMPLY WITH PANDORA'S THIRD-PARTY SUBPOENA**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ....................................................................................................... 1

II.     FACTUAL & PROCEDURAL BACKGROUND ....................................................... 3

     A.      Factual Background ....................................................................................... 3

     B.      Procedural Background................................................................................... 8

III.    LEGAL STANDARD.............................................................................................. 10

IV.     ARGUMENT ......................................................................................................... 11

     A.      Word Collections Must Produce The Documents It Committed to Produce....... 12

     B.      Word Collections Must Search for and Produce Documents in Response to
           Pandora's Requests As Written, Which Call for Relevant Documents ............... 15

     C.      Word Collections' Objections Do Not Justify Withholding Documents............ 22

          1.      The Court Should Strike Word Collections' Boilerplate Objections,
                Which Violate Rule 34(b)(2) ................................................................ 22

          2.      Dismissal of Pandora's Sherman Act Counterclaims Does Not
                Impact the Relevance of the Sought Discovery to Pandora's
                Defenses ............................................................................................. 24

          3.      Word Collections' Business Activities Are Central to Pandora's
                Defenses ............................................................................................. 26

V.      CONCLUSION....................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aleman v. Riverside Cnty. Sheriff's Dep't.*,
  2023 WL 4680925 (C.D. Cal. June 9, 2023) ..........................................................................10

*Altera Corp. v. Clear Logic, Inc.*,
  424 F.3d 1079 (9th Cir. 2005) ...............................................................................................19

*Amphenol Corp. v. Fractus, S.A.*,
  2019 WL 2521300 (S.D.N.Y. June 19, 2019) .......................................................................11

*Apple, Inc. v. Motorola Mobility, Inc.*,
  2011 WL 7324582 (W.D. Wis. June 7, 2011) .......................................................................26

*Bhd. Mut. Ins. Co. v. Vinkov*,
  2020 WL 6489326 (C.D. Cal. Oct. 5, 2020)..........................................................................11

*Bulkmatic Transp. Co. v. Pappas*,
  2001 WL 504839 (S.D.N.Y. May 11, 2001) .........................................................................11

*Cambridge Cap. LLC v. Ruby Has LLC*,
  2022 WL 889143 (S.D.N.Y. Mar. 24, 2022) .........................................................................23

*Diaz v. Heredia*,
  2022 WL 2134967 (C.D. Cal. Mar. 4, 2022).........................................................................23

*Edwards v. Hooks*,
  2022 WL 17367183 (E.D.N.C. Nov. 28, 2022)......................................................................14

*Exist, Inc. v. E.S.Y., Inc.*,
  2015 WL 926003 (S.D. Fla. Mar. 4, 2015)............................................................................21

*Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N. Y.*,
  284 F.R.D. 132 (S.D.N.Y. 2012) ...........................................................................................10

*Fischer v. Forrest*,
  2017 WL 773694 (S.D.N.Y. Feb. 28, 2017)....................................................................23, 24

*Gov't Emps. Ins. Co. v. Mayzenberg*,
  2018 WL 10517075 (E.D.N.Y. Aug. 23, 2018)......................................................................11

*Est. of Hill ex rel. Grube v. NaphCare, Inc.*,
  2021 WL 8892195 (E.D. Wash. Aug. 30, 2021) ...................................................................14

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
    471 U.S. 539 (1985)..................................................................................................17

*Harris v. Bronx Parent Hous. Network, Inc.*,
    2020 WL 763740 (S.D.N.Y. Feb. 14, 2020)............................................................24

*Herrera v. City of Palmdale*,
    2022 WL 17367187 (C.D. Cal. Aug. 8, 2022)..........................................................23

*L.A. Terminals, Inc. v. United Nat'l Ins. Co.*,
    340 F.R.D. 390 (C.D. Cal. 2022)............................................................................23

*Lasercomb Am., Inc. v. Reynolds*,
    911 F.2d 970 (4th Cir. 1990) ..................................................................................25

*Leibovitz v. City of N.Y.*,
    2017 WL 462515 (S.D.N.Y. Feb. 3, 2017)..............................................................23

*Lumetrics, Inc. v. Bristol Instruments, Inc.*,
    101 F. Supp. 3d 264 (W.D.N.Y. 2015) ...................................................................19

*Malibu Media, LLC v. Doe*,
    2016 WL 5478433 (S.D.N.Y. Sept. 29, 2016).........................................................10

*Masimo Corp. v. Mindray DS USA Inc.*,
    2013 WL 12129654 (C.D. Cal. July 17, 2013).........................................................19

*Mon Cheri Bridals, LLC v. Cloudflare, Inc.*,
    2021 WL 1222492 (N.D. Cal. Apr. 1, 2021) ...........................................................21

*Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*,
    1992 WL 51519 (S.D.N.Y. Mar. 6, 1992) ...............................................................26

*N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*,
    325 F.R.D. 36 (E.D.N.Y. 2018) ..............................................................................10

*No Spill, LLC v. Scepter Can., Inc.*,
    2021 WL 3856619 (D. Kan. Aug. 30, 2021) ...........................................................26

*Oppenheimer v. Williams*,
    2021 WL 4086197 (D.S.C. Sept. 8, 2021), *recons. denied*, 2021 WL 5359283
    (D.S.C. Nov. 17, 2021) ...........................................................................................21

*In re Pandora Media, Inc.*,
    6 F. Supp. 3d 317 (S.D.N.Y. 2014), *aff'd sub nom.*, *Pandora Media, Inc. v.*
    *Am. Soc'y of Composers, Authors, and Publishers*, 785 F.3d 73 (2d Cir. 2015) ...................18

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*In re Pandora Media, LLC Copyright Litigation*,
   No. 22-cv-00809-MCS-MAR (C.D. Cal.) ........................................................................ *passim*

*Prac. Mgmt. Info. Corp. v. Am. Med. Ass'n*,
   121 F.3d 516 (9th Cir. 1997) ...........................................................................................19, 25

*Psychic Readers Network, Inc. v. Take-Two Interactive Software, Inc.*,
   2018 WL 3820646 (S.D. Fla. Aug. 10, 2018).........................................................................22

*Rogue Wave Software, Inc. v. BTI Sys. Inc..*,
   2017 WL 6805329 (S.D.N.Y. Dec. 15, 2017) ........................................................................21

*Saks Inc. v. Attachmate Corp.*,
   2015 WL 1841136 (S.D.N.Y. Apr. 17, 2015)....................................................................19, 25

*Sound View Innovations LLC v. Hulu LLC*,
   2018 WL 6164271 (C.D. Cal. June 12, 2018) .......................................................................22

*United States v. Broad. Music, Inc.*,
   426 F.3d 91 (2d Cir. 2005)...................................................................................................18

**Statutes**

Copyright Act.................................................................................................................17, 19, 25

Sherman Act....................................................................................................................8, 24, 26

**Other Authorities**

Fed. R. Civ. P. 26 ..............................................................................................................10

Fed. R. Civ. P. 34 ........................................................................................................23, 24

Fed. R. Civ. P. 37 ................................................................................................................1

Fed. R. Civ. P. 45 .....................................................................................................1, 8, 10

## I.    INTRODUCTION

Applicant Pandora Media, LLC ("Pandora") respectfully submits this Memorandum of Law in support of its motion pursuant to Fed. R. Civ. P. 37(a)(2) and 45 for an order directing non-party Word Collections, Inc. ("Word Collections") to comply with Pandora's subpoena *duces tecum* served April 29, 2023 (the "Subpoena"). Pandora is the defendant in a series of copyright infringement cases brought by nine individual Plaintiffs in the Central District of California, all of which have been consolidated for at least pre-trial purposes ("the Consolidated Litigation").[1] In the Consolidated Litigation, the Plaintiffs, a mix of high-profile comedians and representatives of comedian estates, argue that Pandora failed to secure the necessary licenses to stream their purported "literary works"—the underlying jokes embodied in licensed comedy recordings featuring the same Plaintiff comedians. Word Collections, represented by the same outside counsel as all nine Plaintiffs, is a former counterclaim-defendant in the Consolidated Litigation and the self-described exclusive administrator and licensor of many of the works asserted against Pandora, the alleged infringement of which Plaintiffs claim entitles them to tens of millions of dollars in damages.

Despite more than three months of Pandora's good-faith efforts to engage, Word Collections has not produced a single document in response to the Subpoena. This despite the fact that (1) Word Collections undisputedly holds documents that are relevant to the claims and defenses in the Consolidated Litigation, and was weeks away from starting to produce them when it was a party to that action; and (2) Word Collections committed to producing documents in response to *five* separate requests months ago. Word Collections is not a typical disinterested

---

[1] The Consolidated Litigation is *In re Pandora Media, LLC Copyright Litigation*, No. 22-cv-00809-MCS-MAR (C.D. Cal.). All docket citations herein are to the Consolidated Litigation's case docket.

third party, as it will undoubtedly try to claim. Co-founded by serial litigants Jeff Price and Bob Kohn, both of whom have emerged as would-be expert witnesses on behalf of Plaintiffs in the Consolidated Litigation, Word Collections' business model is predicated on attempting to upend historic licensing practices in the comedy industry as part of their efforts to extort multimillions in undue copyright licensing fees from Pandora and other users of comedy. Multiple Plaintiffs have identified Word Collections as the instigator behind their decision to sue Pandora in the Consolidated Litigation. Further, as Pandora learned through a separate third-party production, Word Collections is funding, coordinating, and arranging counsel for the Consolidated Litigation. Accordingly, Word Collections cannot feign shock that it has been dragged into discovery in the very litigation it is funding, coordinating, and still actively participating in on behalf of Plaintiffs, nor should it be able to rely on non-specific boilerplate recitations of "burden" in withholding documents plainly in its possession and responsive to the Subpoena.

Until the emergence of Word Collections (and another spoken-word licensing collective named Spoken Giants), no comedian ever tried to license separately the jokes embodied in their comedy recordings to a service like Pandora. It had always been the case that a license from the copyright owner of the recording came with (either explicitly or implicitly) all of the rights necessary for a service like Pandora to stream the recording—no separate additional license was needed. But now, Word Collections and its affiliated comedians are trying to force a change to this long-standing historic practice, and they are using the Consolidated Litigation to do so. Specifically, Word Collections holds itself out as a "first of its kind Performing Rights Collection Agency" that purports to have entered into exclusive affiliation agreements that make Word Collections the only entity that can license the rights to its affiliated comedians' jokes that Plaintiffs allege are embodied in comedy recordings. These comedians granted Word Collections

the authority to pool their alleged rights armed with the knowledge that such aggregation, when coupled with Word Collections' blanket "all or nothing" licensing model, would provide the mechanism through which they could collectively extract far more from streaming services like Pandora than they ever could acting alone in a competitive market. Word Collections repeatedly and publicly communicated both its common course of action and its continued recruitment of additional comedians toward this end. In its non-public communications to comedians, Word Collections referred to the "collective weight" it was amassing as a "much larger" "stick."

Because of the central role Word Collections plays in the theory Plaintiffs are deploying in the Consolidated Litigation, Pandora naturally propounded the Subpoena on Word Collections, seeking documents concerning Word Collections' licensing practices, relationship with the Plaintiffs, and initiation of the Consolidated Litigation. These documents are relevant to Plaintiffs' copyright infringement and damages claims, as well as myriad of Pandora's defenses, including implied license, unclean hands, and copyright misuse. Nonetheless, Word Collections refuses to search for and produce documents responsive to multiple requests in the Subpoena, while offering no cognizable basis for its refusals. Even the documents it has agreed to produce do not appear forthcoming—to the point that Pandora must seek the Court's intervention in order to obtain these documents in time to complete discovery in the Consolidated Litigation pursuant to the case calendar set by the Central District of California.

Accordingly, Pandora respectfully moves this Court to compel Word Collections to produce the requested documents within two weeks of the Court's ruling on this motion.

## II.    FACTUAL & PROCEDURAL BACKGROUND

### A.    Factual Background

Pandora has long been and remains best known for its flagship, free-to-the-consumer, non-interactive internet radio service. *See* Pandora Answer to 2nd Am. Consol. Compl. at 11,

Sep. 26, 2022 (ECF. No. 71) ("Answer"). That service offers listeners a radio-style or "lean-back" listening experience, where Pandora creates for each listener their own playlist. *Id.* In addition, Pandora currently offers two different subscription offerings. *Id.* Beginning in 2011, Pandora made the business decision to offer comedy and other spoken-word content in addition to music. *Id.* In any given year, Pandora regularly pays out millions of dollars in royalties for the comedy that it streams and provides the comedians whose works it streams with other non-pecuniary benefits, including promotion. *Id.* at 12.

Pandora has always secured the licenses necessary to stream spoken-word comedy, pursuant to long-standing comedy industry custom and practice. *Id.* at 2-3. Like all other copyright intensive industries except the dysfunctional music licensing industry, spoken-word comedy is licensed "at the source," where the source, or creator of the final product—the record label that creates and/or distributes the comedy recording—secures and passes along all of the necessary rights, including any rights in any pre-existing works used in the new derivative work, to all downstream distributors, licensees, and end users, either explicitly or implicitly. *Id.* As a result of this logical, efficient, and long-standing practice, Pandora has all of the rights it needs to perform, reproduce, and/or distribute the comedy recording and is able to secure all such rights in a single transaction. *Id.* at 3. This is precisely the practice that Pandora has followed and been transparent about since it began offering comedy recordings to its listeners in 2011. *Id.* at 3, 11.

For nearly a decade, and prior to the emergence of Word Collections (and Spoken Giants), no comedian had ever objected to this industry custom and practice. *Id.* at 14. No comedian ever asked Pandora to take a second license, on top of the one Pandora already secures to use comedy recordings, just for the jokes embodied in those recordings. *Id.* Nor had any comedian ever asked Pandora for additional royalties just for the performance of the underlying

jokes, separate from the license fees (and other benefits) they already received for Pandora's use of the comedy recordings. *Id.* To the contrary, comedians regularly approached Pandora in an effort to obtain more plays of their comedy recordings, clearly demonstrating their satisfaction with the way that their content was being licensed and the compensation they were receiving. *See, e.g.*, Pandora First Amended Countercl. at ¶ 37, Nov. 18, 2022 (ECF No. 93) ("Pandora Counterclaims").

That all changed when Word Collections (and Spoken Giants) came onto the scene. After recruiting a critical mass of high-profile comedians, Word Collections made several attempts to force Pandora to pay for superfluous licenses while simultaneously threatening to bring copyright infringement actions. *Id.* ¶¶ 45-54. When it became clear that Pandora did not intend to pay for such superfluous licenses, the first several Plaintiffs, coordinated by Word Collections, filed their individual infringement suits. *Id.* Despite never having raised any concerns with Pandora's use of their comedy—with many of these comedians actively encouraging Pandora to stream more of their comedy—nine comedians have now challenged Pandora's comedy licensing practices, claiming that Pandora has not secured the licenses necessary to stream the jokes embedded in licensed comedy recordings. *See id.* at ¶¶ 37-42; *see also* Answer at 14-21. Seven of the nine Plaintiffs are formally affiliated with Word Collections, the self-described exclusive licensor of the jokes that are embedded in those comedians' comedy recordings. Pandora Counterclaims ¶¶ 54, 60.[2] As a result, the purported "literary works" of these seven

---

[2] As to the two Plaintiffs not formally affiliated with Word Collections, Lewis Black is associated with, and at least previously formally affiliated with, Spoken Giants. *See* Spoken Giants Press Release (ECF No. 122-2). While the final Plaintiff, George Lopez, is not outwardly affiliated with either organization, Pandora is currently seeking discovery concerning his communications and potential affiliation with either entity in relation to bringing the Consolidated Litigation. Notably, on August 15, 2023, Plaintiff Lopez was ordered to produce any such documents. *See* Order on Pandora's Motion to Compel at 7-8 (ECF No. 193). Given the documents recently

Plaintiffs in the Consolidated Litigation, according to Word Collections, can now only be secured from Word Collections. Answer at 15. Without such a license, the Plaintiffs and Word Collections contend that Pandora and other users of comedy are infringing on the Plaintiffs' alleged "literary works" copyrights. *Id.* at 14-21.

According to Word Collections' "founder and current CEO," Jeff Price, Word Collections is "a US and global copyright administration and licensing organization retained by a number of the Plaintiffs to license and administer the rights to their literary works." Price Decl. in Support of Pl. Mot. to Compel at ¶ 1, July 18, 2023 (ECF No. 178-8). But Word Collections' role in this litigation is more involved than a licensing administrator retained by Plaintiffs: it was Word Collections that provoked and coordinated the Plaintiffs' sudden change in behavior, promising Plaintiffs and other comedians a new stream of income—from which Word Collections would take a cut. *See* Joint Stipulation Re: Motion for Protective Order and exhibits attached thereto (ECF No. 183 at 3; ECF Nos. 183-6–183-9). Written discovery produced by Plaintiffs in the Consolidated Litigation shows that Word Collections was the catalyst behind at least four of the Plaintiffs' cases. *See* Plaintiff Ron White, Inc.'s Resp. to Def. Pandora's First Set Of Interrog. at Req. No. 5 ("In June 2021, Plaintiff became aware of Pandora's infringement of the Asserted Works pursuant to discussions with Word Collections, which ultimately resulted in Plaintiff's decision to take legal action against Pandora for its infringement of the Works.") (ECF No. 185-10); Plaintiff Brave Lion Inc.'s Resp. to Def. Pandora's First Set Of Interrog. at Req. No. 5 ("In early 2021, Plaintiff became aware of Pandora's infringement of the Asserted

---

obtained from a third party, showing that Word Collections organized all of the initial cases filed, agreed to pay for all costs and funneled those Plaintiffs to counsel it had arranged, it is certainly reasonable to infer that Word Collections had similar involvement even with the two Plaintiffs who are not formally affiliated with Word Collections.

Works pursuant to a discussion with Jeff Price, which ultimately resulted in Plaintiff's decision to take legal action against Pandora for its infringement of the Works.") (ECF No. 185-11); *see also* Plaintiff Robin Williams Trust's Resp. to Def. Pandora's First Set Of Interrog. at Req. No. 5 ("In January 2021, Plaintiff became aware of Pandora's infringement of the Asserted Works pursuant to a conversation with Jeff Price . . . which ultimately resulted in Plaintiff's decision to take legal action against Pandora.") (ECF No. 185-13); Plaintiff Mary Reese Hicks' Resp. to Def. Pandora's First Set Of Interrog. at Req. No. 5 ("Upon discussing working with Word Collections," Plaintiff "ultimately" decided to "to take legal action against Pandora") (ECF No. 185-12).

Further, documents produced pursuant to a third-party subpoena have now shown that Word Collections' involvement in coordinating the Consolidated Litigation goes deeper than instigating these litigations. These documents highlight how Mr. Price recruited Plaintiffs with promises of windfall recoveries in the hundreds of millions of dollars. *See* ECF No. 183 at 3; ECF Nos. 183-6–183-9. These same documents lay out Word Collections' efforts to arrange legal representation for Plaintiffs and Mr. Price's promise that Word Collections would shoulder the costs of litigation such that there would be "no financial exposure" to Plaintiffs. *Id.* These documents reveal the extent to which Word Collections interacted with not only Plaintiffs but additional third parties acting on Plaintiffs' behalf to gather information and additional documents in pursuit of these claims. *Id.* Despite Plaintiffs having these same documents in their possession for years—and receiving Pandora discovery requests seeking these documents many months ago—Pandora was only able to obtain these documents from a third party who is not represented by King & Ballow. *See* ECF No. 183 at 3.

### B.    Procedural Background

As discussed above, four of the nine Plaintiffs have expressly admitted that Word Collections instigated their lawsuits against Pandora, seven of the nine are formally affiliated with Word Collections, and it appears likely that Word Collections had at least some involvement with the other two Plaintiffs' decisions to join the Consolidated Litigation. Pandora brought counterclaims against Word Collections and the Plaintiff comedians that it is affiliated with, alleging violations of Sections 1 and 2 of the Sherman Act. *See* Pandora Counterclaims. May 5, 2022 (ECF No. 34). Despite being a party to the Consolidated Litigation for 11 months, Word Collections did not produce a single document—even after its motion to stay discovery was denied. *See* Order Re: Mot. To Stay Disc. at 1, 3, Jan. 31, 2023 (ECF No. 139). In that denial, the Court expressly noted that, even if Pandora's antitrust counterclaims were to be dismissed, the target of those counterclaims "would still need to disclose information in response to a number of Pandora's discovery requests." *Id.* at 3. In an effort to secure information that Word Collections had previously conceded was relevant (including as to Pandora's defenses), shortly after the counterclaims were dismissed, Pandora served the Subpoena on Word Collections, a New York entity, at its headquarters, located at 677 West End Avenue, #14A, New York, New York, 10025, on April 29, 2023, with a production date of May 19, 2023. *See* Pandora Subpoena to Word Collections at 1 (Declaration of Allison Aviki ("Aviki Decl.") Ex. A.).[3] Word Collections served Responses and Objections on May 12, 2023, which consisted of

---

[3] Pursuant to Rule 45(d)(2)(B)(i), "At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Given Word Collections' location, the subpoena served on Word Collections required compliance in New York; thus, the Southern District of New York is the district where compliance is required.

boilerplate objections, along with promises to produce documents in response to several requests. Aviki Decl. Ex. B. Word Collections has not to date produced a single document.

Pandora and Word Collections' counsel scheduled a meet and confer for May 24, 2023. Before the meeting, Word Collections' counsel communicated that "Word Collections cannot provide a date certain for *completion* of discovery other than the close of fact discovery on August 28, 2023" but committed to "begin producing documents as soon as possible." Aviki Decl. Ex. C at 10. Soon after the meet-and-confer, Word Collections promised to get back to Pandora "tomorrow." *Id.* at 7. After receiving nothing, Pandora followed up on June 6, and Word Collections' counsel again promised its "further response tomorrow." *Id.* at 4. Again, Pandora received nothing. Pandora followed again on June 12 and, receiving no response, again on June 16. *Id.* at 2-3. On June 19, Word Collections responded, promising "further substantive responses . . . before June 23." *Id.* at 2. On June 26, Pandora again followed up after having received nothing from Word Collections, and Word Collections responded that it was "continuing . . . further investigation," saying that "further responses . . . will be forthcoming." *Id.* at 1. Pandora has heard nothing since late June from Word Collections in response to the Subpoena and the date by which it promised to complete its production—August 28, 2023—has come and gone without having produced a single document.

While refusing to provide documents and information to Pandora, Mr. Price and Mr. Kohn—the two co-founders of Word Collections (Word Collections "About Us" page (ECF No. 160-8 at 1))—have otherwise vigorously participated in the Consolidated Litigation on behalf of all Plaintiffs. On July 18, 2023, Mr. Kohn submitted a 41-page declaration in opposition to Pandora's motion for a protective order against Plaintiffs in which he opined at length on his view of the legal merits of the case as a whole and described documents in his possession that

have not been produced to Pandora. *See* ECF No. 179-36. Similarly, on July 18, Mr. Price submitted a 19-page declaration in support of Plaintiffs' motion to compel discovery from Pandora, offering his own opinions and analysis of the dispute and again describing documents in his possession that have not been produced to Pandora. *See* ECF No. 178-8.

## III.    LEGAL STANDARD

Rule 45 permits non-party discovery regarding "any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 45; *see id.* 26(b); *Malibu Media, LLC v. Doe*, 2016 WL 5478433, at *4 (S.D.N.Y. Sept. 29, 2016) (noting that "Rule 26(b)(1) applies to a party issuing a subpoena" (citation omitted)); *see Aleman v. Riverside Cnty. Sheriff's Dep't.*, 2023 WL 4680925, at *2 (C.D. Cal. June 9, 2023). "Information is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Relevance is a matter of degree, and the standard is applied more liberally in discovery than it is at trial." *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 47 (E.D.N.Y. 2018). And, the "scope of discovery allowed under a Rule 45 subpoena is the same as that allowed under Federal Rule of Civil Procedure 26." *Aleman*, 2023 WL 4680925, at *2. "Once relevance has been shown, it is up to the responding party to justify curtailing discovery." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N. Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) (quotation marks and citation omitted). But the mere conclusory statement by a party that the requested discovery is overly broad, burdensome, oppressive, and irrelevant is not adequate to voice a successful objection. On the contrary, "the party resisting discovery must show specifically how each [request] is not relevant or how . . . each question is overly broad, burdensome or oppressive." *Bhd. Mut. Ins. Co. v. Vinkov*, 2020 WL 6489326, at *6 (C.D. Cal. Oct. 5, 2020) (quotation marks and citation omitted).

Finally, courts routinely grant motions to compel production from non-parties, particularly when the non-parties play an "important role" in the underlying litigation. *See, e.g.*, *Amphenol Corp. v. Fractus, S.A.*, 2019 WL 2521300, at *11 (S.D.N.Y. June 19, 2019) (granting motion to compel even if requests "may prove duplicative" because third party had "business dealings with the . . . [d]efendants" so the documents movant sought were "important to efforts to prove infringement and damages"); *Bulkmatic Transp. Co. v. Pappas*, 2001 WL 504839, at *2 (S.D.N.Y. May 11, 2001) (granting motion to compel because documents sought related to "transactions between [nonparty] and the individual defendants, . . . as well as other . . . companies . . . that are specifically mentioned in the Amended Complaint"); *Gov't Emps. Ins. Co. v. Mayzenberg*, 2018 WL 10517075, at *2 (E.D.N.Y. Aug. 23, 2018) (granting motion to compel "information regarding the professional and business relationship between defendants and non-parties").

## IV.    ARGUMENT

Pandora respectfully requests the Court to order Word Collections to comply with the Subpoena for three independent reasons. ***First***, Word Collections already agreed to produce documents in response to several requests in the Subpoena, but has yet to do so. Accordingly, Pandora requests an order from the Court setting a date certain by which Word Collections must produce the documents it committed to produce months ago. ***Second***, the requests in the Subpoena call for documents that are clearly relevant to claims and defenses in the Consolidated Litigation. As further detailed below, the Subpoena seeks documents related to Word Collections' licensing practices; relationship with comedians, including Plaintiffs in the Consolidated Litigation; and role in initiating the Consolidated Litigation, topics plainly relevant to, among other things, Pandora's copyright misuse and unclean hands defenses and Plaintiffs' infringement claims and damages, if any. ***Finally***, Word Collections' boilerplate objections do not justify withholding the documents.

**A.      Word Collections Must Produce The Documents It Committed to Produce[4]**

As a preliminary matter, Pandora is forced to ask this Court for an order compelling

Word Collections to produce documents by a date certain in response to requests for which Word

Collections *already agreed* to produce documents. Specifically:

- In response to Request No. 1, which asked for "[a]ll [d]ocuments [c]oncerning
  contracts, agreements, and memoranda of understanding between [y]ou and any
  of the Plaintiffs," Word Collections committed to produce "documents sufficient
  to show contracts or agreements with Plaintiffs related to Word Collection[s]'
  representation of Plaintiffs for the purpose of collecting royalties for Plaintiffs'
  Literary Works." Aviki Decl. Ex. B at 7.

- In response to Request No. 3, which asked for "[a]ll [d]ocuments [c]oncerning
  any entity that streams, distributes, reproduces, broadcasts, publicly performs, or
  otherwise uses audio or audio-visual comedy recordings, [i]ncluding all
  [d]ocuments [c]oncerning requests for licenses from [y]ou, licenses proposed by
  [y]ou, or licenses granted by [y]ou to such entities for [c]omedy [w]orks [r]ights,"
  Word Collections committed to produce "responsive, non-privileged documents
  concerning Pandora." *Id.* at 8-9.

- In response to Request No. 5, which asked for "[a]ll [d]ocuments [c]oncerning
  [c]ommunications between [y]ou and any comedian or other [c]omedy [w]orks
  [r]ightsholder, [i]ncluding any [p]laintiffs," Word Collections committed to

---

[4] In response to Request Nos. 7, 9-10, 24, and 27, Word Collections represented that it has "no responsive documents." *Id.* Pandora reserves the right to raise Word Collections' responses to these Requests in a later motion should it become known that Word Collections' representations with respect to these Requests were false.

produce "responsive, non-privileged documents concerning its communications with Plaintiff comedians." *Id.* at 9-10.

- In response to Request No. 6, which asked for "[a]ll [d]ocuments [c]oncerning any [c]ommunications or agreements with any record label, record company, sound recording rights administrators or aggregators, or live performance venues on the one hand, and [y]ou, any comedians or other [c]omedy [w]orks [r]ightsholders, on the other regarding the licensing of [c]omedy [w]orks," Word Collections committed to produce "responsive, non-privileged documents concerning [c]ommunications or agreements with record labels, record companies, sound recording rights administrators or aggregators, or live performance venues, and Word Collections or Plaintiffs, regarding the licensing of the Asserted Works." *Id.* at 10-11.

- In response to Request No. 16, which asked for "[a]ll [d]ocuments [c]oncerning any actual or potential fees or terms for a license from [y]ou for [c]omedy [w]orks [r]ights, [i]ncluding any forecasts of license fees for [c]omedy [w]orks [r]ights," Word Collections committed to produce "responsive, non-privileged documents sufficient to show actual or potential license fees for Pandora's use of the Asserted Works represented by Word Collections." *Id.* at 18-19.

Despite agreeing to produce the above categories of documents in ***May 2023***,[5] Pandora has not received a single document from Word Collections to date, nor has Pandora received any

---

[5] Technically, May 2023 was not the first time Word Collections agreed to produce these documents. While a counterclaim defendant in the Consolidated Litigation, Word Collections "agree[d] to search for and produce the substance of all information communicated to investors" and "agree[d] to search for and produce all financial documents Pandora requested" in March 2023. ECF No. 160 at 6.

estimates as to when these documents might be provided. This is unacceptable, and has forced Pandora to seek, as a last resort, an order from this Court compelling the production of these documents.[6] Where, as here, a party has committed to provide discovery but refuses to commit to a date certain by which to do so, courts routinely grant motions to compel. *See, e.g.*, *Est. of Hill ex rel. Grube v. NaphCare, Inc.*, 2021 WL 8892195, at *2 (E.D. Wash. Aug. 30, 2021) ("In light of Defendant's vague commitment to meet its discovery obligations to Plaintiffs, and the long history of Plaintiffs' efforts to obtain the material requested without involving the Court, the Court finds it appropriate to grant Plaintiffs' Motion to Compel the material from Defendant NaphCare by a date certain."); *Edwards v. Hooks*, 2022 WL 17367183, at *2 (E.D.N.C. Nov. 28, 2022) (granting motion to compel and ordering that "Defendants shall provide supplemental responses to these requests within thirty (30) days of the date of this order"). Indeed, the Central District of California recently did precisely that in the Consolidated Litigation when ***Plaintiffs*** refused to commit to a date certain by which to provide promised supplemental discovery responses. *See* ECF No. 193 at 9 ("the Court is persuaded that a date certain is a reasonable request . . . Plaintiffs provide no specific justification for further delay").

The relief sought here is uncontroversial; Word Collections promised the production of certain documents, but to date has not supplied them and continues to stonewall. Pandora respectfully requests that the Court order their production, by a date certain, and impose costs on Word Collections for forcing Pandora to bring a motion simply to hold Word Collections to its promise.

---

[6] The limitations contained in Word Collections' responses to each of these Requests are also unacceptable. As discussed below, Word Collections should be compelled to respond to each Request, as written.

**B.    Word Collections Must Search for and Produce Documents in Response to Pandora's Requests As Written, Which Call for Relevant Documents**

Setting aside Word Collections' failure to produce the documents it has already promised to produce, Word Collections' response to the Subpoena is otherwise deficient. Word Collections must search for and produce documents in response to Pandora's Requests, which call for clearly relevant information and documents relating to Word Collections' relationship with the Plaintiffs and the works asserted against Pandora, as well as Word Collections' role in bringing, funding, and managing the Consolidated Litigation. Specifically:

- Request No. 1 seeks all documents concerning Word Collections' agreements with the Plaintiffs. Aviki Decl. Ex. B. at 7.

- Request No. 2 seeks all documents concerning Word Collections' role in bringing the Consolidated Litigation against Pandora. *Id.*

- Request No. 3 seeks documents concerning Word Collections' licensing plans. *Id.* at 8.

- Request No. 4 seeks all documents concerning Pandora or Sirius XM (Pandora is a wholly owned subsidiary of Sirius XM). *Id.* at 9.

- Request No. 5 seeks Word Collections' communications with comedians. *Id.* at 9.

- Request No. 6 seeks agreements and related documents with record labels and live performance venues concerning the licensing of spoken-word comedy routines. *Id.* at 10.

- Request Nos. 8 and 11 seek documents concerning Word Collections' affiliations with comedians, and comedians' ability, incentive, and/or likelihood to license independently of Word Collections. *Id.* at 12, 15.

- Request No. 12 seeks all documents concerning Spoken Giants (*id.* at 15), which is relevant including because Word Collections previously argued that its licenses compete with Spoken Giants' licenses, and that this competition eliminates any potential misuse (*see* ECF No. 104 at 10, 16-17).

- Request No. 13 seeks a list of comedians represented by Word Collections, while Request No. 14 seeks a list of the works licensed by Word Collections. Aviki Decl. Ex. B. at 16-17.

- Request No. 15 seeks marketing and investor pitch materials, and Request No. 19 seeks documents concerning Word Collections' strategic and marketing plans. *Id.* at 17, 20.

- Request No. 16 seeks documents concerning actual or potential license fees or terms for a Word Collections Comedy Works license. *Id.* at 18.

- Request No. 17 seeks documents sufficient to show Word Collections' historic and forecasted license fees, license rates, costs, revenues, and profitability. *Id.* at 19.

- Request No. 18 seeks Word Collections' documents concerning licensing practices, including blanket licenses and alternatives to blanket licenses. *Id.* at 19-20.

- Request Nos. 20 and 21 seek documents concerning benefits to comedians from affiliating with Word Collections. *Id.* at 21-22.

- Request No. 22 seeks documents concerning Word Collections' strategies on which potential comedians to approach about affiliating with it. *Id.* at 23.

- Request No. 23 seeks all documents concerning streaming services' removals of Word Collections-affiliated comedians' recordings. *Id.*

- Request No. 25 seeks documents concerning Word Collections' solicitation of comedians to affiliate with Word Collections. *Id.* at 25.

- Request No. 26 seeks all documents concerning the value of the underlying jokes. *Id.* at 26.

These Requests are all relevant for at least three reasons.[7] ***First,*** they call for documents that are relevant to Pandora's copyright misuse and unclean hands defenses. The Copyright Act grants each individual copyright holder a limited monopoly over the original elements of their creative works. 17 U. S. C. §102(a); *see also Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 546 (1985). But as noted above, Word Collections licenses the works of all of its affiliated comedians on a collective, all-or-nothing, basis. As a result, it does not offer a license just for an individual affiliated comedian's purported "literary works" rights.

To get a license to a comedian's works from Word Collections, a licensee must also take a license to the jokes of all of the other comedians affiliated with Word Collections. By doing so, the collective set of comedians represented by Word Collections is able to secure license fees well in excess of what they could secure acting independently seeking a license for just their own works in a market where individual comedians compete with one another for airplay on Pandora. In other words, by consolidating the rights of multiple comedians into a single blanket license, Word Collections and its affiliated comedians are able to take advantage of their collective might

---

[7] Word Collections' refusal to produce these documents is all the more troubling considering it previously agreed to produce documents in response to nearly identical document requests when it was a party to the Consolidated Litigation. Specifically, Word Collections previously agreed to produce documents in response to requests that are virtually identical to Request Nos. 12, 13, 18, 22, 23, 25, and 26 when it was a party in the Consolidated Litigation.

and secure fees that no individual comedian, acting alone, could ever secure in a competitive marketplace. ECF No. 183-6 at 7-8 (Email dated March 17, 2021, from Jeff Price soliciting new comedian estate, listing comedians already affiliated with Word Collections and stating: "the collective weight and 'stick' is much larger."). Indeed, Word Collections expressly based its business model and licensing approach on ASCAP and BMI (ECF No. 160-9)—two collective music licensing entities that have been subject to antitrust consent decrees in this Court with the Antitrust Division of the U.S. Department of Justice for almost a century due to the inherently anticompetitive nature of this type of collective licensing. (ECF Nos. 179-9 and 179-10); *see also, e.g.*, *In re Pandora Media, Inc.*, 6 F. Supp. 3d 317, 323 (S.D.N.Y. 2014), *aff'd sub nom.*, *Pandora Media, Inc. v. Am. Soc'y of Composers, Authors, and Publishers*, 785 F.3d 73 (2d Cir. 2015) (the consent decree under which ASCAP operates attempts to "ameliorate the anti-competitive concerns raised by ASCAP's consolidation of music licenses"); *United States v. Broad. Music, Inc.*, 426 F.3d 91, 93 (2d Cir. 2005) ("Because of the inherently anti-competitive conditions under which BMI and ASCAP operate, they are regulated by court-approved consent decrees.").

This expansion of the limited monopoly granted by the Copyright Act amounts to copyright misuse and unclean hands. *See Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005) ("When copyright misuse applies, we do not allow enforcement of the copyright for the period of misuse."); *see also id.* ("The Fifth Circuit has discussed copyright misuse as an 'unclean hands defense' which 'forbids the use of the [copyright] to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which is contrary to public policy to grant." (citation omitted)); *Lumetrics, Inc. v. Bristol Instruments, Inc.*, 101 F. Supp. 3d 264, 269-70 (W.D.N.Y. 2015) ("Generally, the doctrine of copyright misuse bars copyright owners from

recovering for infringement where they have extended the scope of their copyrights to control areas outside of their copyright monopoly." (quotation marks and citation omitted)).

Moreover, while copyright misuse and antitrust claims can overlap, it is well-established that "a defendant in a copyright infringement suit need not prove an antitrust violation to prevail on a copyright misuse defense." *Prac. Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 521 (9th Cir. 1997); *Saks Inc. v. Attachmate Corp.*, 2015 WL 1841136, at *12 (S.D.N.Y. Apr. 17, 2015) ("It is true that, historically, the defense of copyright misuse has been successfully asserted most often in cases where anticompetitive effects were alleged. But . . . other courts (also outside this circuit, but including at least two Circuit Courts of Appeals) have concluded that the defense can be asserted when 'the copyright is being used in a manner violative of the public policy embodied in the grant of a copyright.'" (citation omitted)); *cf. Masimo Corp. v. Mindray DS USA Inc.*, 2013 WL 12129654, at *7 (C.D. Cal. July 17, 2013) (describing discovery on antitrust claims overlapping with, *inter alia*, patent misuse: "[t]he determination of each will likely involve similar issues and evidence"). Affirming this very point, in the same initial order dismissing Pandora's antitrust counterclaims, the Court in the Consolidated Litigation explained that even with the counterclaims dismissed Pandora may be able to obtain facts in discovery sufficient to revive the claims because that discovery would be equally relevant to Pandora's affirmative defenses. ECF No. 83 at 27.

As a result, documents related to these licensing practices and the significance of the Word Collections catalog, including: (i) agreements between comedians and Word Collections (Request Nos. 1 and 8); (ii) documents concerning licensing proposals, plans, strategies, and practices (Request Nos. 3, 6, 15, 18, 19, and 22); (iii) communications between Word Collections and comedians (Request Nos. 5 and 25); (iv) documents regarding the need for a

19

license to the Word Collections catalog (Request Nos. 11 and 12); (v) documents regarding license fees and other benefits to comedians of joining Word Collections (Request Nos. 16, 17, 20, 21, and 26); and (vi) documents regarding the significance of the Word Collections catalog (Request Nos. 13, 14, and 23) all go to the heart of Pandora's copyright misuse and unclean hands defenses.

*Second,* many of the requests, including Request For Production Nos. 2, 3, 4, 5, 6, 15, 20, 21, and 26 are also relevant as they relate to Plaintiffs' copyright infringement claims and Pandora's defenses based upon industry custom and practice. As noted above, long-standing custom and practice in the comedy industry has been that a license from the record label conveys all necessary rights (either explicitly or implicitly) for a service like Pandora to perform, reproduce, and distribute comedy recordings—no separate license just for the underlying jokes was ever needed. Plaintiffs now, at the urging of Word Collections, have embarked on a campaign to change that, and force services like Pandora to secure two separate licenses and pay two separate royalty streams—one for just the recording and a second for the jokes embodied in that recording. These Requests all relate to how spoken-word comedy has historically been licensed and Word Collections' and its affiliated comedians' efforts to change that.

*Third,* many of the requests, including Request For Production Nos. 3, 4, 6, 16, 17, 20, 21, and 26, are also relevant to a calculation of copyright infringement damages, if ultimately needed. These requests all call for documents that relate to the royalties sought or secured by Word Collections for a license to its catalog of works, the financial benefits to comedians of joining Word Collections and licensing the rights to their "literary works" through Word Collections, or the value of the rights at issue in the Consolidated Litigation. As an initial matter, courts routinely conclude that these types of documents are relevant for copyright infringement

damages. *See, e.g.*, *Rogue Wave Software, Inc. v. BTI Sys. Inc.*, 2017 WL 6805329, at *1 (S.D.N.Y. Dec. 15, 2017) (order "requiring Defendants to produce underlying business records and revenue information associated with their distribution and sale of products containing the software at-issue in this matter"); *Mon Cheri Bridals, LLC v. Cloudflare, Inc.*, 2021 WL 1222492, at *2 (N.D. Cal. Apr. 1, 2021) (granting defendant's motion to compel plaintiff's financial information because if the plaintiffs planned to "argue for any statutory damages higher than the minimum under section 504(c), [defendant] [wa]s entitled to present evidence that [p]laintiffs did not suffer any lost profits to argue that [p]laintiffs are seeking a windfall"); *Oppenheimer v. Williams*, 2021 WL 4086197, at *3 (D.S.C. Sept. 8, 2021) (collecting cases and similarly determining that the objecting party's relevance objections were without merit because the objecting party's "revenue" from "previous copyright claims and/or demands" and "earnings from his photography business" were relevant to "the issue of damages"), *recons. denied*, 2021 WL 5359283 (D.S.C. Nov. 17, 2021); *Exist, Inc. v. E.S.Y., Inc.*, 2015 WL 926003, at *3 (S.D. Fla. Mar. 4, 2015) (where a plaintiff "explicitly requests a judgment in the amount of its 'actual damages,' including 'all profits to each Defendant plus all losses to [Plaintiff]' . . . [b]ecause these allegations necessarily put Plaintiff's financial status before, during, and after the alleged wrongful conduct at issue, Plaintiff's financial information is relevant and thus generally discoverable"); *Psychic Readers Network, Inc. v. Take-Two Interactive Software, Inc.*, 2018 WL 3820646, at *2 & n.2 (S.D. Fla. Aug. 10, 2018) (granting motion to compel production of documents sufficient to show plaintiff's revenues and expenses over 20-year period); *Sound View Innovations LLC v. Hulu LLC*, 2018 WL 6164271, at **3-4 (C.D. Cal. June 12, 2018) (compelling production of financial data when the resisting party neither "provided any specific

information to show that responding to the requests would cause undue burden" nor "explain[ed] with specificity how the requests should be narrowed").

Moreover, because, as noted above, Word Collections licenses its catalog of works on a collective basis in order to secure license fees well above what any individual comedian could secure on their own, the royalties and valuations in these sought documents should provide an absolute upper bound on the damage suffered by Plaintiffs, should there be a finding of infringement. This is especially true considering that as part of their requested relief, Plaintiffs seek a "running royalty" for the use of the Asserted Works going forward. *See* Second Amended Consolidated Complaint (ECF No. 70) at ¶ 180 ("Plaintiffs are entitled to a running royalty on all future exploitations of the Works following judgement [sic] in an amount to be determined."); ¶ 200 (prayer for relief asked for "a running royalty stemming from use of the Works by Defendant following judgment in an amount to be proven at trial").

In sum, Word Collections cannot contend that these Requests do not call for relevant documents; on the contrary, they seek information and documents that go to the heart of Plaintiffs' infringement claims and Pandora's defenses.

### C.    Word Collections' Objections Do Not Justify Withholding Documents

#### 1.    *The Court Should Strike Word Collections' Boilerplate Objections, Which Violate Rule 34(b)(2)*

As a preliminary matter, Word Collections violated Rule 34(b)(2) and waived all rights in any objections by responding to each Request with boilerplate objections. Fed. R. Civ. P. 34(b)(2)(B) (requiring "with specificity the grounds for objecting to the request, including the reasons"); *Fischer v. Forrest*, 2017 WL 773694, at *3 (S.D.N.Y. Feb. 28, 2017) ("From now on in cases before this Court, any discovery response that does not comply with Rule 34's requirement to state objections with specificity (and to clearly indicate whether responsive

material is being withheld on the basis of objection) will be deemed a waiver of all objections

(except as to privilege)."); *Cambridge Cap. LLC v. Ruby Has LLC*, 2022 WL 889143, at *5

(S.D.N.Y. Mar. 24, 2022) (deeming "any objections" waived after party "fail[ed] to comply with

the provisions of Rule 34 regarding the manner of making objections"); *Leibovitz v. City of N.Y.*,

2017 WL 462515, at *2 (S.D.N.Y. Feb. 3, 2017) ("The City lists general, boilerplate objections

to each of plaintiff's requests for production. Because such objections violate Fed. R. Civ. P.

34(b)(2)(B), they are stricken.").[8]

    Word Collections has responded to each of Pandora's 27 document requests with non-

specific and conclusory boilerplate objections. For example, in response to each Request, Word

Collections repeats its objection "on the grounds that the Request is overly broad and unduly

burdensome." *See generally* Aviki Decl. Ex. B. Word Collections also lodged boilerplate

"General Objections" to Pandora's requests and then "incorporate[d] its General Objections into"

---

[8] Courts in the Central District of California reach the same conclusion. *See, e.g.*, *Herrera v. City of Palmdale,* 2022 WL 17367187, at *1 (C.D. Cal. Aug. 8, 2022) ("The requesting party is entitled to individualized, complete responses to each of the [Requests for Production] . . . . .") (cleaned up); *Diaz v. Heredia,* 2022 WL 2134967, at *3 (C.D. Cal. Mar. 4, 2022) ("Conclusory objections that these interrogatories are unduly burdensome or privileged are without any evidentiary support and, hence, are insufficient."); *L.A. Terminals, Inc. v. United Nat'l Ins. Co.*, 340 F.R.D. 390, 397 n.2 (C.D. Cal. 2022) ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections . . . Similarly, boilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper." (quoting *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006))). Indeed, the Magistrate Judge in the Consolidated Litigation has warned: "Parties responding to document requests shall not use boilerplate objections that violate Rule 34(b)(2) . . . Nor shall responding parties use the concept of 'disproportionality' as a synonym for previous boilerplate objections of irrelevance, overbreadth, undue burden, or the like … Conclusory objections based on alleged disproportionality, burden, cost, or overbreadth without any basis in fact shall be summarily rejected and/or deemed waived." Mag. J. Rocconi's Standing Order on Discovery Disputes, available at https://www.cacd.uscourts.gov/sites/default/files/documents/MAR/AD/MAR%20Chambers%20Standing%20Discovery%20Order_April2021.pdf, at 2.

each specific response. *Id.* at 6. But incorporating general objections by reference into each request does not particularize the objection, nor cure the deficiency of the general objections. *See, e.g.*, *Fischer*, 2017 WL 773694, at *3 ("[I]ncorporating all of the General Objections into each response violates Rule 34(b)(2)(B)'s specificity requirement as well as Rule 34(b)(2)(C)'s requirement to indicate whether any responsive materials are withheld on the basis of an objection."). This Court should therefore strike all of Word Collections' objections.[9]

### 2. *Dismissal of Pandora's Sherman Act Counterclaims Does Not Impact the Relevance of the Sought Discovery to Pandora's Defenses*

Word Collections also frequently objects to many of the Requests on the grounds that the Requests seek information that was sought as part of Pandora's now-dismissed antitrust counterclaims. This is a non-sequitur. The dispositive question is whether the Requests call for documents and information relevant to claims or defenses in the Consolidated Litigation—and the clear answer to that question is that they do.

Pandora's copyright misuse affirmative defense, as alleged in its Answer in the Consolidated Litigation, is that "Plaintiffs have engaged in one or more acts that constitute misuse of their copyrights . . . by: wrongfully attempting to extend those rights beyond the scope of the limited monopoly granted by the Copyright Act . . . gaining, seeking to gain, or conspiring to gain an improper monopoly; gaining, seeking to gain, or conspiring to gain and abuse market power; and engaging in other anticompetitive conduct." Answer at 44-45 (Pandora's First Defense). As the Ninth Circuit has made clear, a copyright misuse defense like Pandora's does

---

[9] In addition, in response to Request Nos. 4, 8, 11, 13, and 19-21, Word Collections either referred to its commitment to produce documents in response to another Request, or refused to search on duplicative grounds. Aviki Decl. Ex. B. Withholding documents based on a duplicative objection is improper. *See, e.g.*, *Harris v. Bronx Parent Hous. Network, Inc.*, 2020 WL 763740, at *4 (S.D.N.Y. Feb. 14, 2020) (finding duplicative objection "without merit" and compelling production of documents).

not rise or fall based on a separately pled antitrust claim. *Prac. Mgmt. Info. Corp*, 121 F.3d at

521 ("a defendant in a copyright infringement suit need not prove an antitrust violation to prevail

on a copyright misuse defense"); *Saks Inc.*, 2015 WL 1841136, at *12. To require otherwise

would make no sense, particularly given that copyright misuse as a defense implicates a broader

range of conduct than the Sherman Act addresses. *See Lasercomb Am., Inc. v. Reynolds*, 911

F.2d 970, 978 (4th Cir. 1990) ("[W]hile it is true that the attempted use of a copyright to violate

antitrust law probably would give rise to a misuse of copyright defense, the converse is not

necessarily true—a misuse need not be a violation of antitrust law in order to comprise an

equitable defense to an infringement action."). Further, and in addition to copyright misuse,

Pandora's unclean hands affirmative defense articulated in its Answer in the Consolidated

Litigation is that Plaintiffs have "sought license fees to which they are not entitled, and used their

copyrights in furtherance of anticompetitive conduct." Answer at 50 (Pandora's Seventeenth

Defense). Accordingly, Pandora is entitled to discovery into Word Collections' and Plaintiffs'

collusive licensing scheme, substantiating its defenses regardless of whether Pandora also has

live affirmative antitrust claims.

     Nor does the fact that Pandora *did* plead now-dismissed antitrust counterclaims disqualify

Pandora from the discovery to which it is entitled. Indeed, the Court in the Consolidated

Litigation made precisely this point when, in the same order dismissing Pandora's initial antitrust

counterclaims, it observed that "discovery may yield information about the nature of the

agreements between the comedians and Word Collections, at the very least in the context of

Pandora's copyright misuse defense." ECF No. 83 at 27. That observation makes perfect sense

against the backdrop of caselaw that emphasizes the potential evidentiary and factual overlap

between copyright misuse or unclean hands defenses on the one hand, and antitrust claims on the

other. *See, e.g.*, *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH,* 1992 WL 51519, at *1

(S.D.N.Y. Mar. 6, 1992) ("In the context of discovery, this request [for severance of the antitrust

counterclaims] would be wholly unworkable and inefficient, and further would not give

sufficient recognition to the overlap of the [patent] misuse and antitrust claims."); *No Spill, LLC*

*v. Scepter Can., Inc.,* 2021 WL 3856619, at *3 (D. Kan. Aug. 30, 2021) ("[T]he Defendants

assert a defense of unclean hands, which may involve the same evidence as the proposed

antitrust claims."); *Apple, Inc. v. Motorola Mobility, Inc.,* 2011 WL 7324582, at *17 (W.D. Wis.

June 7, 2011) (concluding that "some of the facts relevant to [the counterclaim-defendant's]

unclean hands defense [relating to "licensing commitments to standards setting organizations"]

will overlap with [its antitrust counterclaims]"). Word Collections cannot refuse to produce

discovery relevant to Pandora's defenses on the basis that similar discovery may have been also

responsive to Pandora's now-dismissed counterclaims.

In short, it is highly improper for Word Collections to refuse to search for and produce

documents responsive to the Subpoena beyond those that Word Collections concludes are

relevant to what it unilaterally deems to be "the surviving claims and defenses in this Action"

(Aviki Decl. Ex. B at 3-4).

### 3.    *Word Collections' Business Activities Are Central to Pandora's Defenses*

For several of the Requests, Word Collections repeats objections along the lines that

Word Collections' "business activities are not related to any claims or defenses." *Id.* at 8, 11-27.

But this objection also fails, because the CEO of Word Collections, Jeff Price, admitted that "[i]n

[his] capacity as CEO of Word Collections," he "act[s] as administrator for the literary works of

Plaintiffs George Carlin, Andrew Dice Clay, and Robin Williams (and others)." Price Decl. in

Support of Pl. Mot. To Compel at ¶ 24 (ECF No. 178-8).[10] Accordingly, Word Collections'

business activities—as the self-described exclusive licensor of seven of the nine Plaintiffs for

their purported literary works rights—are plainly relevant to at least Plaintiffs' infringement

claims and damages calculation and Pandora's copyright misuse and unclean hands defenses,

which relate to how Word Collections and its affiliated comedians have decided to engage in

collective licensing in order to extract royalties far in excess of what any individual rightsholder,

acting alone, could secure. As explained above, such collective licensing can be the basis for a

copyright misuse defense even if it does not amount to an antitrust violation.

## V.    CONCLUSION

For the foregoing reasons, Pandora respectfully requests that this Court order Word

Collections to search for and produce any non-privileged documents responsive to the Requests

in the Subpoena within two weeks.

---

[10] Similarly, Word Collections' co-founder and advisor Bob Kohn describes himself as a longtime representative of the estate of Plaintiff and Word Collections-affiliated comedian George Carlin. ECF No. 179-36 at ¶ 3. Despite this, based on the parties' meet-and-confer communications, it is unclear whether Word Collections is excluding from its search and collection the documents belonging to Mr. Kohn despite previously having agreed to do so when Word Collections was a party to the Consolidated Litigation. *See* ECF No. 160 at 6 ("Word Collections would agree to search for and collect documents from the additional custodians Pandora requested [including] Bob Kohn."). This is improper. Based on Word Collections' website, court filings, and Plaintiffs' Initial Disclosures and discovery responses, Kohn is "likely to have discoverable information." *See, e.g.*, Countercl. Def. Word Collections' Initial Disclosures at 2 (ECF No. 160-10); Pls.' Initial Disclosures at 2, 4 (ECF No. 160-11). And based on his purported expert report filed in the Consolidated Litigation, Mr. Kohn appears to possess documents that are directly relevant to the Consolidated Litigation. Pandora requests that this Court order Mr. Kohn to be a custodian in any search and/or document production that Word Collections is compelled to undertake.

Dated:  August 31, 2023                  MAYER BROWN LLP
                                            PAUL M. FAKLER
                                            JACOB B. EBIN
                                            ALLISON AVIKI
                                            WILLIAM PATRY

By: */s/ Paul M. Fakler*              
       Paul M. Fakler

Attorneys for Applicant
PANDORA MEDIA, LLC