**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In the Matter of Application of PANDORA MEDIA, LLC,<br><br>Applicant,<br><br>- For an Order –<br><br>To Compel WORD COLLECTIONS, INC. to Produce Documents,<br><br>Respondent. | Misc. Civil Action No. 1:23-mc-00315<br>(Related to Civil Action No. 2:22-cv-00809-MCS-MAR C.D. Cal.) |

**WORD COLLECTIONS, INC'S MEMORANDUM OF LAW IN OPPOSITION TO PANDORA'S MOTION TO COMPEL WORD COLLECTIONS, INC. TO COMPLY WITH PANDORA'S THIRD-PARTY SUBPOENA**

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND.......................................... 3

    A.    Factual Background............................................................................... 3

    B.    Procedural Background ......................................................................... 4

III.    LEGAL STANDARD .................................................................................... 6

IV.    ARGUMENT ................................................................................................ 7

V.    CONCLUSION............................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Alcon Vision, LLC v. Allied Vision Grp., Inc.*, 2019 U.S. Dist. LEXIS 152073, *6 (S.D.N.Y. Sept. 6, 2019) ......................................................................................... 6, 12

*Avent v. Solfaro*, 210 F.R.D. 91, 95 (S.D.N.Y. 2002)................................................ 5

*Duran v. E L G Parking Inc.*, No. 18 Civ. 6685 (GBD) (SLC), 2021 U.S. Dist. LEXIS 69560, *5 (S.D.N.Y. Apr. 9, 2021)........................................................................ 6

*Olin Corp. v. Lamorak Ins. Co.,* No. 84 Civ. 1968 (JSR), 2021 U.S. Dist. LEXIS 21679, 2021 WL 396781, at *10 (S.D.N.Y. Feb. 4, 2021))................................................. 6

*RG Abrams Ins. v. Law Offs. of C.R. Abrams,* No. 2:21-cv-00194-FLA-MAAx2021 U.S. Dist. LEXIS 253216, *22 (C.D. Cal. Dec. 22, 2021). .............................................. 6

**Statutes**

Fed. R. Civ. P. 26(b)(2)(C) ........................................................................... 6

**Rules**

L.R 37.2 ................................................................................................................. 5,6

## I.      INTRODUCTION

Respondent Word Collections, Inc ("Word Collections") respectfully submits this Memorandum of Law in opposition to Applicant Pandora Media, LLC's ("Pandora") motion for an order directing word Collections' compliance with Pandora's subpoena *duces tecum* (the "Subpoena"). Pandora, the defendant in a series of consolidated copyright infringement cases in the Central District of California (the "Consolidated Litigation"), brings this improper motion in disregard of this Court's local rules and as part of a concerted effort to re-litigate its already-dismissed antitrust claims brought against Word Collections (previously a Counter-Defendant in the Consolidated Litigation) disguised as a copyright misuse affirmative defense. These discovery arguments have already been rejected both through the dismissal of Pandora's counterclaims against Word Collections, and in discovery disputes before Magistrate Judge Rocconi in the Central District of California. *See* Order re Mot. To Dismiss Counterclaims (ECF. No. 164); Order Re: Def.'s Mot. To Compel. (ECF. No. 193) at 7 FN 3. They should not be permitted now.

Through this motion to compel Word Collections' response to this nonparty subpoena, Pandora seeks the Court's blessing to rifle, unfettered, through the irrelevant and unrelated business records of a nonparty, without any plausible link between the documents sought and the claims or defenses at issue in this case. The Consolidated Litigation is an action brought by nine comedian Plaintiffs (or their estates) for Pandora's willful infringement of their copyrights in specific literary works embodied in comedy sound recordings (the "Asserted Works") that Pandora has been exploiting on its service without a license from or payment of royalties to the Plaintiffs for more than a decade. Word Collections is not a plaintiff in this action and does not own the copyrights in the Asserted Works. As licensing administrator for seven of the nine Plaintiffs, Word Collections approached Pandora on behalf of those seven clients to request that Pandora appropriately license the works owned by those clients, as required by law. When Pandora refused, the seven Word Collections' clients, along with two other comedians, proceeded with this Consolidated Action. These claims are theirs alone, and Pandora's defenses

rely solely on *Plaintiffs'* actions, not the actions of Word Collections, its business operations, finances, roster of clients, communications with third parties, or anything related to third-party investment in the company. Moreover, to the extent that any of Pandora's requests *are* deemed relevant to the claims or defenses in the Consolidated Action, such responsive documents concerning any of the Plaintiffs that exist are in the possession of Plaintiffs, and should be sought from them rather than Word Collections.

Nevertheless, Pandora persists. Pandora now seeks through this improper motion to compel the production of documents that are entirely irrelevant to the Consolidated Litigation, as they have nothing to do with either Pandora's willful infringement of the Plaintiffs' copyrights, or the behavior of Plaintiffs that Pandora baselessly claims constitutes copyright misuse. Rather, Pandora attempts to delve into Word Collections' business model and plans, financial information, and other areas of Word Collections' business endeavors including the licensing of musical compositions all of which having absolutely nothing to do with Plaintiffs or the Asserted Works, in a blatantly overbroad fishing expedition.

Pandora attempts to argue that, because Word Collections had agreed to produce certain documents when it was a counter-defendant, it should now be obliged to produce those same documents as a nonparty. First, Pandora ignores the fact that Word Collections' discovery obligations at the time it was still a party were the subject of involved discovery disputes, and that Word Collections' agreement to produce documents did not constitute waiver of its arguments that these documents were irrelevant, or its other objections. Second, Pandora's own statements bely the falsity of its argument: Pandora states that Word Collections "previously agreed to produce documents in response to requests that are virtually identical" (Dkt. No. 2 at 17, FN 7). But those requests were made when Word Collections was a *party*, and related to Pandora's counterclaims that have now been dismissed with prejudice. They are entirely irrelevant to the Plaintiffs' surviving claims of *Pandora's* willful copyright infringement of Plaintiffs' Asserted Works. Pandora attempts to treat Word Collections as if it is still a party and its dismissed counterclaims are still at issue in the Consolidated Litigation. But that is not the

case, and the discovery conduct of both Pandora and Word Collections prior to those claims'
dismissal has no bearing on the present discovery dispute before this Court.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Factual Background

Since 2011, digital streaming service Pandora has made spoken-word comedy recordings
available to its subscribers. Although it claims that it has "secured the licenses necessary to
stream spoken-word comedy," Dkt. 2 at 4, that claim is founded on an entirely manufactured
"custom and practice" that, according to Pandora, permits it to stream comedy recordings
*without* licensing the underlying literary work embodied by those sound recordings. If Pandora's
argument is to be believed, the only licenses they were required to procure were the licenses for
the sound recordings, but not the underlying literary works. That is not the case. Rather, it is
undisputed that under the Copyright Act both sound recordings and the underlying composition
embodied by that recording are separately copyrightable works, entitled to be licensed
separately. Indeed, the Court in the Consolidated Litigation has explicitly found that sound
recordings and the underlying literary works that they embody are separate and distinct works.
(ECF. No. 83 at 2 FN 1) ("Similar to recorded music, a performance of a comedic routine and
the underlying routine itself are two distinct works under the Copyright Act."). And despite
Pandora's claims to the contrary, comedians have historically licensed their literary works
separate and apart from sound recordings, and have been entitled to and received mechanical
royalties for the distribution and reproduction of their literary works. (ECF. No. 179-36 at 22-
30). Indeed, third party discovery has revealed recording agreements and royalty statements from
major record labels demonstrating that comedians have licensed and received royalties for
literary works separate and apart from royalties for sound recordings. (ECF No. 184 at 2; ECF
No. 196 at 9 FN 4). Pandora's claim – that no one in the industry has ever separately licensed or
paid royalties for comedians' underlying compositions – is thus demonstrably false. The simple
truth is that *Pandora* has not acquired the licenses or paid the royalties that the law requires.
Pandora's thin attempts to excuse its infringement because "no comedian has ever objected" to

Pandora's behavior (Dkt. No. 2 at 9) is tantamount to arguing that because no one has called them on their infringement before, no one ever can. That is simply not how the law works.

After over a decade of avoiding paying royalties for these unlicensed literary works, Pandora is now lashing out at Word Collections for their audacity in requesting that Pandora acquire the licenses required to exploit its clients' literary works, and in seeking royalties for the works being exploited. Word Collections' crime appears to be that it dared to challenge Pandora's unlawful failure to license or pay royalties for comedians' literary works. First, Pandora brought counterclaims against Word Collections based on alleged violations of Sections 1 and 2 of the Sherman Act. (ECF No. 34). These claims were dismissed with prejudice. (ECF. No. 193). Next, in seeking to paint Plaintiffs' discovery requests as improper in a motion for a protective order, Pandora invented a conspiracy theory surrounding Word Collections' CEO and founder Jeff Price, claiming that he was the puppetmaster behind the scenes, directing Plaintiffs' discovery requests to gin up unrelated litigation. (ECF. No. 178at 42). This conspiracy theory was roundly ignored by the Court, as Word Collections was no longer a party to the Consolidated Litigation. (ECF. No. 193 at 7, FN 3).

Now, Pandora attempts to resurrect discovery that it levied at Word Collections when it was a Counter-Defendant, under the guise of seeking information related to its claims of "copyright misuse." But copyright misuse is an affirmative defense related to *Plaintiffs'* conduct, not those of unrelated third parties. Word Collections' conduct has already been found to be non-actionable. Pandora seeks through its third-party subpoena to root through Word Collections' business practices, business model, financial and investor information, and other confidential information – all of which has nothing to do with Plaintiffs or the Asserted Works.

### B.    Procedural Background

Pandora served its subpoena on nonparty Word Collections on April 29, 2023. Word Collections provided its responses and objections on May 12, 2023, and the parties met and conferred on May 24, 2023. After their meet and confer, the parties mutually agreed to seek an extension of discovery deadlines, and on June 9, 2023 filed a joint stipulation to continue pretrial

deadlines (ECF No. 171), which was granted on June 15, 2023 (ECF. No. 174). As a result, the deadline for completion of discovery was moved from August 28, 2023 to February 28, 2023. As a result, Word Collections' previous commitment to complete its production of documents that it has agreed to produce has accordingly shifted from August 28, 2023 to February 28, 2023. Pandora attempts to ignore the parties' extension of the time for discovery, and hold Word Collections to its previous commitment to complete discovery by a deadline that is no longer operative. Nor has Pandora been diligent in seeking this discovery from Word Collections; it has not corresponded with Word Collections since late June, and has not attempted to further meet and confer with Word Collections before bringing this discovery motion.

Furthermore, Pandora has failed to adhere to the rules of this Court in filing this motion. Local Civil Rule 37.2 requires that "[n]o motion under Rules 26 through 37 inclusive of the Federal Rules of Civil Procedure shall be heard unless counsel for the moving party has first requested an informal conference with the Court by letter-motion for a pre-motion discovery conference… and such request has either been denied or the discovery dispute has not been resolved as a consequence of such conference." L.R 37.2. Pandora has not done so. This rule "requires parties to 'make a genuine effort to resolve the dispute' before resorting to the court's involvement." *Avent v. Solfaro*, 210 F.R.D. 91, 95 (S.D.N.Y. 2002) (quoting *Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D. 94, 99 (S.D.N.Y. 1997). Pandora's failure to pursue a resolution of this dispute – and indeed its entire neglect to pursue these discovery requests for two months, only to file this motion without any correspondence with or notice to Word Collections before doing so – is not only counter to the purpose of L.R. 37-2, but in contravention of Magistrate Judge Rocconi's reminder to Plaintiffs *and Pandora* that "both parties are cautioned to remember that while no one expects discovery 'to be a non-stop exchange of pleasantries'… both parties have a general responsibility to approach the discovery process in good faith and avoid unnecessary court intervention," and warning that "both parties are admonished to work together in good faith to complete their discovery obligations and reach agreements on future discovery disputes." (ECF No. 193 at 7). Moreover, Pandora's violation of L.R. 37.2 is alone grounds for this motion

to be denied, as "a party's failure to comply with procedural requirements to raise a discovery dispute, including Local Rule 37.2, 'dooms' the application." *Duran v. E L G Parking Inc.*, No. 18 Civ. 6685 (GBD) (SLC), 2021 U.S. Dist. LEXIS 69560, *5 (S.D.N.Y. Apr. 9, 2021) (collecting cases and quoting *Olin Corp. v. Lamorak Ins. Co.,* No. 84 Civ. 1968 (JSR), 2021 U.S. Dist. LEXIS 21679, 2021 WL 396781, at *10 (S.D.N.Y. Feb. 4, 2021)).

Pandora's motion should be dismissed on these procedural grounds alone, to be brought only after engaging directly with Word Collections to attempt to resolve this dispute without court involvement, and – if resolution cannot be reached – after properly complying with this Court's rules requiring a letter motion requesting a pre-motion discovery conference. Should Pandora's motion not be denied on these procedural grounds, it should be denied on the basis that the discovery requests in question are entirely irrelevant to the Consolidated Litigation's surviving claims and defenses; and, to the extent that they are relevant, are unduly burdensome and more appropriately sought from parties to the litigation rather than nonparty Word Collections.

## III.    LEGAL STANDARD

As the moving party in this motion to compel, Pandora bears the burden of establishing that the discovery sought is relevant. *RG Abrams Ins. v. Law Offs. of C.R. Abrams,* No. 2:21-cv-00194-FLA-MAAx2021, U.S. Dist. LEXIS 253216, *22 (C.D. Cal. Dec. 22, 2021). In determining relevance, the information must relate to the claims or defenses *at issue in the case*. Further, discovery should be limited where the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive…" or if "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action…." Fed. R. Civ. P. 26(b)(2)(C). Where discovery is sought through nonparty subpoenas, the Court must consider whether the information sought is "available from any other source." *Alcon Vision, LLC v. Allied Vision Grp., Inc.*, 2019 U.S. Dist. LEXIS 152073, *6 (S.D.N.Y. Sept. 6, 2019). Where the information sought can be obtained from discovery requests made to parties to the litigation rather than nonparties, discovery requests made to nonparties should be

limited. *Id.* Here, Pandora's discovery requests at issue are both irrelevant and overbroad, as they seek "all documents" regarding topics entirely unrelated to either Plaintiffs or the Asserted Works at issue in the Consolidated Litigation. *Id* (holding subpoena requesting "all documents" to be overbroad). To the extent that they can be appropriately limited to any information specifically related to Plaintiffs or the Asserted Works, that information is more appropriately sought from the Plaintiffs in the Consolidated Action, rather than nonparty Word Collections.

## IV.     ARGUMENT

Pandora's motion to compel should be denied for several reasons. First, as discussed above, Pandora has failed to attempt in good faith to resolve this discovery dispute with Word Collections before seeking judicial intervention; and has further failed to comply with the procedures for bringing a discovery motion before this Court. This alone is grounds for the motion's denial.

Second, to the extent Pandora's motion seeks the production of documents that Word Collection has already agreed to produce, this motion is premature. With the extension of the date for the completion of discovery, Word Collections is well within the appropriate time by which it will comply with its discovery obligations. Word Collections has committed to producing documents responsive to Request Nos. 1, 3, 6, and 16. It will do so.

Finally, Pandora's nonparty subpoena to Word Collection is nothing more than a thinly veiled attempt to resurrect the antitrust claims that have already been dismissed with prejudice. Although it purports to seek documents relevant to its copyright misuse affirmative defense, that defense relates only to *Plaintiffs'* actions; if Plaintiffs have indeed misused their copyrights, it is only *their* actions that would result in such a finding, not those of nonparties. Pandora's subpoena demands the blanket production of *all* documents regarding overly broad topics that have absolutely nothing to do with Plaintiffs or the Asserted Works, but involve only Word Collections' business. This is both highly irrelevant and overbroad and inappropriate. To the extent that documents that do relate to Plaintiffs or the Asserted Works may be appropriate, such requests should be made directly to Plaintiffs.

7

The document requests at issue in this motion include blanket requests for "*all documents*" concerning Word Collections' "role in bringing the Consolidated Litigation against Pandora" (Request No. 2, Aviki Decl. Ex. B. at 7); its "licensing plans" – without limitation to the licensing of Plaintiff comedians' works or the Asserted Works (Request No. 3, *Id.*at 8); *all documents* concerning Pandora or Sirius XM, regardless of their relationship to Plaintiffs, the Asserted Works, or even the general licensing of comedy works (Request No. 4, *Id.* at 9) ; Word Collections' communications with comedians – including, again, all comedians rather than just the Plaintiffs in the Consolidated Litigation, and without any limitation by topic to those related to the Consolidated Litigation (Request No. 5, *Id.* at 9); agreements with record labels and live performance venues concerning the licensing of spoken-word comedy routines – *again*, without any limitation to agreements concerning the licensing of Plaintiff comedians' work (Request No. 6, *Id.* at 10); Word Collections' affiliations with comedians, and their ability to license their work independently of Word Collections (Request Nos. 8 and 11, *Id.* at 12, 15); all documents concerning Spoken Giants (a counter-defendant to Pandora's dismissed antitrust counterclaims) (Request No. 12, *Id.* at 15); a list of comedians and works represented and licensed by Word Collections (to the extent that this information includes Plaintiff Comedians, Word Collections has already agreed to produce documents sufficient to show their agreements with Plaintiff comedians) (Request Nos. 13 and 14, *Id*. at 16-17); Word Collections' marketing and investor pitch materials (Request No. 15, *Id.* at 17); strategic and marketing plans (Request No. 19, *Id.* at 20); actual or potential license fees (Request No. 16, *Id.* at 19); historic and forecasted license fees (Request No. 17, *Id.* at 19); licensing practices (Request No. 18, *Id.* at 19-20); the benefit of comedians' affiliation with Word Collections (Request Nos. 20 and 21, *Id.* at 21-22);; strategies for the solicitation of, and the solicitation of comedians to affiliate with Word Collections (Request Nos. 22 and 25, *Id.* at 23, 26); the removal of Word Collections-affiliated comedians' recordings from streaming services (Request No. 23, *Id.* at 23); and the value of underlying jokes (Request No. 26, *Id.* at 26).

The vast majority of these requests have one thing in common: they are directed at the

entirety of Word Collections' business model and operations, without the slightest attempt to relate the requests to the Plaintiffs, the Asserted Works at issue in the case, or even – for all requests except Request 2, Word Collections' alleged role in "instigating" the Consolidated Litigation. Pandora rests its argument on the relevance of these documents to its "copyright misuse" affirmative defense. But that defense relies on the actions of *Plaintiffs*, not nonparties. The actions of nonparties cannot sustain a copyright misuse or unclean hands defense. Further, the mere filing of an infringement action does not constitute copyright misuse. *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, 2018 U.S. Dist. LEXIS 106727, *4 (S.D.N.Y. April 25, 2018). And even collective action in the form of filing "collective litigation" against alleged infringers does not constitute copyright misuse. *UMG Recordings, Inc. v. Lindor*, 531 F. Supp. 2d 453, 458-59 (E.D.N.Y. 2007); *Basic Books, Inc. v. Kinko's Graphics Corp.,* 758 F. Supp. 1522, 1538-39 (S.D.N.Y. 1991). Courts have indeed refused to compel discovery in similar situations, denying motions to compel where defendant has alleged that Plaintiffs are pursuing litigation as a proxy for a nonparty. *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC,* 2018 U.S. Dist. LEXIS 106727, *4 (S.D.N.Y. April 25, 2018). There, as here, information about what specifically spurred Plaintiff to enforce its copyrights is not relevant to, and does not serve to provide evidence of, defendant's copyright misuse or unclean hands defenses. Where discovery regarding strategies and policies related to copyright licensing as a potential basis for copyright misuse defenses *has* been allowed, that discovery has been directed at and limited to the activities of *Plaintiffs* in those cases, not nonparties. *Wixen Music Publ'g, Inc. v. Triller, Inc*., 2022 WL 3636000, at *2 (C.D. Cal. Aug. 1, 2022).

It is a simple fact that the claims remaining at issue in this case – and Pandora's affirmative defenses – relate only to Pandora's alleged infringement of Plaintiff comedians' copyrights in their underlying literary works, and Plaintiffs' alleged misuse of their copyrights in bringing the Consolidated Litigation. It is the behavior of Pandora and the Plaintiffs alone that is at issue here. The documents targeted by Pandora's requests - which essentially amount to requests for Word Collections' *entire* business strategy, business model, communications with

all clients or potential clients (regardless of subject matter!), marketing and investor materials, and financial information – have no bearing whatsoever on either Pandora's infringing behavior, or the Plaintiffs' right to enforce their copyrights. To imply otherwise is simply absurd. And, as Word Collections does not *own* the copyrights in question, or even have standing to sue for infringement, Word Collections can have no role in any alleged copyright misuse, which by definition must be misuse *by the copyright owner*.   Indeed, in ruling on a previous Motion to Compel, Magistrate Judge Rocconi already found Pandora's argument about the relevance of Word Collections' behavior to its claims that Plaintiffs have engaged in copyright misuse to be "unpersuasive." (ECF No. 193 at 7) (granting Pandora's motion to compel discovery from Plaintiffs on other grounds). Through this nonparty subpoena, Pandora attempts to create a circus sideshow of Word Collections' entire business, including its business strategy, marketing, investor information, and even strategy for attracting new clients. The absurdity of this fishing expedition is made plain with the audaciousness of Pandora's requests, which include, by way of example, a request for "*all* documents concerning marketing materials, investor pitch materials, or other Documents provided to any comedians (or their representatives), investors or potential investors, Including drafts thereof…." (Request No. 15) (emphasis added). This is nothing more than a transparent bid to seek information about Word Collections' business – a business that Pandora has made clear it thinks should not exist. But as the Court in the Consolidated Litigation has repeatedly affirmed, Word Collections has done nothing wrong. Its business activities are simply not at issue in this case.

Pandora's attempt to argue that the documents sought from Word Collections are relevant to Pandora's affirmative defense based on alleged industry custom and practice, or to the calculation of copyright infringement damages, are similarly unavailing. Pandora is attempting to argue that Word Collections' existence represents a sharp and dramatic departure from previous alleged industry custom and practice, which, according to Pandora, excused their failure to license such underlying literary works. Pandora cannot now argue that Word Collections' licensing activities, which Pandora likens to copyright misuse, is a part of that industry custom

and practice. This simply defies logic. And while licensing revenue *can* be relevant to damages for copyright infringement, such information is relevant only when it relates to the *parties'* licensing revenue, not an unrelated nonparty – and certainly not the overall financial information of a nonparty, regardless of that financial information's relationship to licensing revenue generally, or even its relationship to the licensing revenue related to Plaintiffs specifically.[1] Indeed, the cases Pandora cites fail to support its argument, as they permit discovery only into the licensing revenue of *parties* to the litigation.

      To the extent that these document requests could include potentially relevant information, they are, as written, facially overbroad and overly burdensome.[2] They seek "all documents" concerning a wide range of topics that are not tied in any way to Plaintiffs, the Asserted Works, or the claims and defenses at issue. Word Collections' business includes the licensing and collection of royalties for the use of spoken word literary works and musical compositions; Word Collections currently has over 30 literary work clients as well as over 60 musical work clients, and, in seeking to grow its business, it corresponds with an even greater number of unrelated comedians and songwriters, including those who are not and may never be clients of Word Collections. Of those comedians, only *seven* are Plaintiffs in this action. But Pandora appears to believe that the existence of those seven justifies their investigation into, for example, *all* communications between *any* comedian or comedy works rightsholder – on *any* topic, regardless of whether or not it has anything to do with comedy licensing at all, much less the Consolidated

---

[1] For example, Request for Production No. 21 involves "upfront payments, bonuses, royalty guarantees, or equity interests" that Word Collections has paid or proposed to pay to any comedian or comedy works rightsholder (including comedians who are not Plaintiffs). These payments are not limited to those related to any licensing of comedians' works, or royalties from such licenses, but encompass *any* payments made to *any* comedian for *any* reason. This information has no bearing on any copyright infringement damages that may be available to Plaintiffs.

[2] Pandora takes issue with Word Collections' objections on the grounds of overbreadth and burden as "boilerplate." That is not the case. While Word Collections did incorporate its general objections into each response, it also detailed, in response to each individual request, why that request is irrelevant, overbroad, and unduly burdensome. That these objections are similar does not make them boilerplate or improper; rather, it simply means that Pandora propounded multiple requests for production that are similarly overbroad and seek information that is similarly irrelevant.

Litigation in question. (Request for Production No. 5). The proposition that, simply because it acts as copyright administrator to some of the Plaintiffs, Word Collections should be required to provide *all* communications with *any* comedians about *any* topic is simply absurd. And this is only one example of the laughable overbreadth of Pandora's requests; the others are equally unjustifiable. Such facially overbroad requests are inappropriate in any discovery, but particularly in nonparty discovery. *Alcon Vision, LLC v. Allied Vision Grp., Inc.*, 2019 U.S. Dist. LEXIS 152073, *6 (S.D.N.Y. Sept. 6, 2019).

Further, even should this Court limit these requests to pertain to the claims and defenses at issue in this case, that limitation would make it inappropriate for this discovery to be sought from nonparty Word Collections, as information regarding Word Collections' relationships with Plaintiff comedians and licensing of their works is similarly within the possession and control of Plaintiffs, and therefore more appropriately sought from them rather than nonparty Word Collections. *Id.*

V.      **CONCLUSION**

For the foregoing reasons, Word Collections respectfully requests that this Court deny Pandora's request for Word Collections to search for and produce documents in response to these Requests.

Dated: September 7, 2023

KING & BALLOW

By: /s/*Richard S. Busch*
Richard S. Busch

Attorney for Respondent
WORD COLLECTIONS, INC